No. 83-316

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

ARDELL HULL, individually and
d/b/a A & H TRUCKING and as
P & H TRUCKING; and DEL McALPINE,

Plaintiffs and Respondents,

-vs-

D. IRVIN TRANSPORT LTD., a body
corporate; and SPENCER GROUP, an
unincorporated association consisting
of SPENCER CONTRACT HAULING LTD., a
body corporate, TROCHU TRUCKING
SERVICES LTD., a body corporate,
and D. IRVIN TRANSPORT LTD., a body
corporate,

Defendants,

and

THE CLARKSON COMPANY LIMITED, and
FRUEHAUF TRAILER COMPANY OF CANADA LTD.,

Intervenors and Appellants.

---

APPEAL FROM:   District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable Joel Roth, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Crowley Law Firm; Sherry J. Matteucci argued,
Billings, Montana (Clarkson Co. Ltd.)
Church, Harrison, Johnson & Williams; Michael B.
Anderson argued, Great Falls, Montana (Fruehauf)

For Respondent:

Jardine, Stephenson, Blewett & Weaver; Jack Lewis
argued, Great Falls, Montana (Hull)

---

Submitted:   June 19, 1984
Decided:     October 23, 1984

Filed:   OCT 23 1984

*Ethel M. Harrison*

---
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This case is a priority dispute between Hull and McAlpine, Montana residents who obtained judgments and then attached certain semi truck trailers and tractors of defendants, and Clarkson and Fruehauf, Canadian corporations which claimed prior security interests in the vehicles. Clarkson and Fruehauf appeal from the order of the Eighth Judicial District Court, Cascade County, granting summary judgment in favor of Hull and McAlpine. The property in question consists of nine trailers and/or semi trucks. For the sake of simplicity they will be referred to as units 1 through 9 throughout this opinion.

During 1980 and 1981, Hull and McAlpine entered into written agreements with defendants D. Irvin Transport, Ltd., (hereinafter Irvin) and Spencer Group (hereinafter Spencer Group). Spencer Group is a Canadian unincorporated association consisting of Spencer Contract Hauling, Ltd., a Canadian corporation, Trochu Trucking Services, Ltd., (Trochu), a Canadian corporation, D. Irvin Transport, Ltd., a Canadian corporation, and other corporations not involved here. Hull and McAlpine are both Montana residents and U.S. citizens. As provided in the agreements, Hull and McAlpine leased trucks owned by them to Irvin and Spencer Group for the purpose of hauling cargo in and throughout Canada and the listed states. The transportation of cargo was done in the names of either Irvin or Trochu.

Fruehauf is a corporation which manufactures trailers for semi trucks. It sold two trailers, units 1 and 2, to Spencer Contract Hauling in August of 1981, by means of a

-2-

"conditional sales contract," which retained title to the trailers in Fruehauf until the total purchase price was paid. The contract was signed and registered with the Alberta Vehicle Registry.

On February 3, 1977, Spencer Group executed a demand debenture to evidence a loan of certain sums from the Canadian Imperial Bank of Commerce (hereinafter the Bank). Under the tems of the debenture, Spencer Contract Hauling granted the Bank a security interest in all of Spencer Contract Hauling's personal property whenever acquired and wherever located. One of the remedies in case of default provided by the debenture is the appointment of a receiver, who is authorized to take possession of and liquidate all of Spencer Contract Hauling's personal property among other powers. Spencer Contract Hauling defaulted and on December 29, 1981, the Bank appointed Clarkson as receiver of Spencer Contract Hauling in accordance with the terms of the demand debenture. Stan Spencer, apparently the president or head of Spencer Group accepted the appointment of Clarkson as receiver.

On December 21, 1981, Spencer Group sent a form letter to all leased operators, including Hull and McAlpine, notifying them that they would not be paid the amounts owed them under the hauling contracts due to a lack of available funds. They were also notified that the Bank would be appointing a receiver of the assets and affairs of Spencer Contract Hauling. Nevertheless, fertilizer was loaded by Spencer Group onto units 1 and 2, the Fruehauf trailers, and Hull transported the fertilizer from Calgary to Butte. After doing so, Hull pulled the trailers to his home in

Teton County and parked them. McAlpine was in California pulling units 3 and 4 when he received his notice. When he returned to Montana, he parked the units at his residence in Teton County also. They promptly contacted Spencer Group about being paid, and when told they would not be paid brought the underlying action.

The complaint was filed on January 7, 1982. Hull and McAlpine contacted Fruehauf to ascertain the value of the units, and Fruehauf personnel mentioned that Spencer Group owed them money. However, they did not mention any claimed mortgages or security interests in the property. Units 1 through 4 were attached by the sheriff of Teton County on January 7. On January 8, unit 5 was attached by the sheriff of Silver Bow County. Units 6, 7 and 8 were attached on January 20 by the sheriff of Cascade County, and on that same day, unit 9 was attached by the sheriff of Missoula County. All nine units were attached pursuant to writs of attachment issued out of the District Court of the Eighth Judicial District for Cascade County. All are registered in Alberta, Canada, and have either a rated capacity or a load carrying axle of at least 10,000 pounds. The Alberta registrations name Irvin as the owner of all units except unit 5, which is registered to Trochu.

After filing the complaint, a copy of it and the summons were served on Charles Irvin in Toole County as "Director of D. Irvin Transport, Ltd." and as "Associate of Spencer Group." On January 27, 1982, Clarkson filed a motion to intervene as defendant or to substitute it in place of Spencer Contract Hauling. On the same day it also filed a motion to quash the writs of attachment. The

motions were denied for failure of Clarkson to plead a claim or defense as required by rule 24(c), M.R.Civ.P. Having failed to appear and plead, defaults were entered against the defendants on January 29, 1982. Hull recovered a judgment in the amount of $74,811.51 and McAlpine recovered a judgment in the amount of $101,176.13.

On February 23, 1982, Clarkson again moved to intervene and quash the attachment. Fruehauf moved to intervene on March 4, 1982. The basis of Clarkson's motion was that Spencer Contract Hauling had no equity in the attached vehicles, that the vehicles were in the control of Spencer Contract Hauling, not Irvin or Trochu, and as such its appointment as receiver gave it a claim to the vehicles prior in time to Hull's and McAlpine's. Clarkson also contends that five of the vehicles are encumbered by a prior security interest held by Commerce Leasing and Bow-Mac Leasing, by virture of their having leased the vehicles to Spencer Contract Hauling. Both leasing companies have appointed Clarkson as their agent for purposes of this case. The basis of Fruehauf's motion was that it had title to the two trailers, units 1 and 2, pursuant to the conditional sales contract. Both Clarkson and Fruehauf were allowed to intervene.

Neither Fruehauf, Clarkson or the Bank has caused any lien or encumbrance on the vehicles to be filed in Montana. The Fruehauf conditional sales contract covering units 1 and 2 was registered with the Alberta Office of Vehicle Registry on September 8, 1981. Under Alberta law, certificates of title are not given, provided or required on motor vehicles. The Motor Vehicles Division registers the owners of vehicles

operating out of Alberta and issues vehicle registrations. A different office, the Office of Vehicle Registry, Personal Property Registration Branch, maintains the records of liens and encumbrances on motor vehicles operating out of Alberta. Liens and encumbrances are to be filed in that office to be perfected.

Hull, McAlpine, Clarkson and Fruehauf all moved for summary judgment, claiming that their respective encumbrances or attachments, had priority over the other parties'. After the issues were briefed and argued the District Court ruled in favor of Hull and McAlpine. An extensive memorandum was filed in support of this ruling, where the District Court advanced several grounds which it felt either individually or alternatively were sufficient to require such a result. These alternative grounds include the court's reading of Montana public policy, and several Montana and federal statutory provisions. The conclusion reached was that Clarkson and Fruehauf had no right, title or interest in the subject vehicles superior to the attachment of Hull and McAlpine. Clarkson and Fruehauf appeal this ruling.

Of the numerous issues raised by Clarkson and Fruehauf, only the following need by addressed in this opinion:

(1) Did the District Court acquire jurisdiction over defendants D. Irvin Transport, Ltd., the "Spencer Group," Spencer Contract Hauling, Ltd., or any other named defendant by service upon Charles Irvin as "Director of D. Irvin Transport, Ltd." and "associate of Spencer Group?"

(2) Were the writs of attachment valid and properly

issued and enforced by the District Court?

(3) If jurisdiction was properly invoked, did the District Court err in concluding that no genuine issues of material fact existed which would preclude an order granting Hull and McAlpine's motion for summary judgment?

Appellants first attack the underlying judgment against Irvin, Trochu, Spencer Contract Hauling and Spencer Group. They contend that Hull and McAlpine have not proven the legal status of the above entities, and absent such proof, service on Charles Irvin as "Director of D. Irvin Transport, Ltd." and "associate of Spencer Group" is insufficient to give the District Court jurisdiction. However, Hull and McAlpine correctly argue that questions of defective service of process may be raised only by the one on whom attempted service was made. In Re Roberts' Estate (1936), 102 Mont. 240, 58 P.2d 495. This rule is equally applicable to parties and intervenors in a lawsuit. See 72 C.J.S. Process, section 106. Therefore appellants may not attack the service on Charles Irvin and the issue is not properly before the Court.

The same rule applies to appellants' objections to the issuance of the writs of attachment. Defects in the issuance of the writs may only be raised and objected to by the defendants in an attachment proceeding. Section 27-18-711, MCA and Patch v. Stewart (1927), 78 Mont. 192, 253 P. 254. A third party is entitled to assert its interest in the attached property as appellants were allowed to do in this case. However, not every party may attack defects in the issuance of the writs, only the defendant in the action. Again this issue is not properly before the

Court.

Appellants next contend there were several questions of material fact which were either not addressed by the trial court or were improperly decided on respondents' motions for summary judgment. We agree. Summary judgment, "[W]as not intended nor can it be used as a substitute for existing methods in the trial of issues of fact. . . " Kober and Kyris v. Billings Deaconess Hospital (1966), 148 Mont. 117 at 122, 417 P.2d 476 at 479. The purpose of a motion for summary judgment is to determine whether any issues of material fact exist, and whether the moving party is entitled to judgment as a matter of law. Rule 56(c) M.R.Civ.P., and Cereck v. Albertson's, Inc. (1981), 195 Mont. 409, 637 P.2d 509.

There are several important unanswered questions which remain in this case, especially concerning the validity of the security interests held by the Canadian creditors. Though Hull and McAlpine did not rest their case on any supposed failure of the security interests to attach, the trial court's memorandum implied such a possibility and it obviously weighed on the decision below. The trial court also decided several issues of fact, which is improper on a motion for summary judgment. The trial court found that the "Presumption that Irvin and Trochu were [the] owners of units 3 through 9 [is] not overcome by the evidence." This is obviously an issue which is properly left to the trier of fact. The court also did not ever address Fruehauf's claim of ownership concerning units 1 and 2.

In short, numerous issues of fact remain which must be resolved and applied to the appropriate law. The above is

by no means a complete list of the outstanding questions of fact. Counsel for both parties and the District Court Judge are properly left the task of framing the issues, as the important facts are not completely before this Court, but remain to be uncovered. Without sufficient facts before us, it would be unwise to risk misguiding the lower court and counsel by attempting to list all remaining material issues of fact.

Lastly, we note that the parties requested clarification of Montana law applied here by the trial court. It would be premature for us to advise the parties and the lower court on possible application of the law when the case is not completely before us. When all the pertinent facts are known, the District Court is the forum where initial application of the law should be made.

Reversed and remanded for further proceedings as outlined in this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

I dissent from the remand. In my opinion the majority has strained to find factual issues. This case appears ripe for ruling upon the legal questions.

The majority states:

> "The trial court found that the 'presumption that Irvin and Trochu were [the] owners of units 3 through 9 [is] not overcome by the evidence.' This is obviously an issue which is properly left to the trier of fact."

The trial court's memorandum in support of its summary judgment specifically states that any factual issue existing between the presumption and other evidence was not necessary to the summary judgment and was not a question of fact resolved by the court.

In my opinion we should decide the legal questions in this case. Since the case is being remanded for determination of factual issues I hesitate to make a determination on the legal questions. The more propitious course is to reserve ruling until the case returns and is reargued.

Justice