No. 94-165

IN    SUPREME COURT OF THE STATE OF MONTANA

1994

JEFF and NANCY ROE,

     Plaintiffs and Appellants,

v.

CORBIN WATER USERS' ASSOCIATION,

     Defendant and Respondent.

APPEAL          District Court of the Fifth Judicial District,
In and for the County of Jefferson,
The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

     For Appellants:

          Linda J. Garofola, Reynolds, Motl, Sherwood
and Wright, Helena, Montana

     For Respondent:

          Harold H. Harrison, Harrison and Murphy,
Helena, Montana

FILED

NOV 21 1994

Filed:

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:   October 5, 1994

Decided:   November 21, 1994

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Appellants Jeff and Nancy Roe filed a complaint on July 29, 1992, and amended their complaint on March 3, 1993, in the Fifth Judicial District Court in Jefferson County, requesting permanent and temporary access to water from the Corbin Water System for both of their properties. On August 3, 1993, the District Court granted respondent Corbin Water User's Association's (CWUA), motion for summary judgment. The Roes appeal. We reverse.

The following issue is dispositive on appeal:

Did the District Court err when it granted CWUA's motion for summary judgment?

### FACTUAL BACKGROUND

The Roes reside on and own two adjacent lots in Corbin, Montana. They have a home on one lot and a trailer on the adjoining lot, which they lived in while they renovated their home. Due to water pollution caused by local hard rock mining operations, the public drinking water in Corbin became contaminated, forcing the Department of State Lands to install a new water system. When this new water system was installed, the Roes were left out of the group of persons designated to receive water from the new system, but were later included.

CWUA, a non-profit Montana Corporation, operates the new water system and has a duty to furnish water to its members and to other users according to its by-laws. CWUA approved installation of the Roes' two water lines, but has only allowed them to use one water line.

2

CWUA's by-laws state, among other things, that "each dwelling constitutes one (1) membership and one (1) hookup . . . ." Dwelling is not defined and there does not appear to be a specific limitation of one hookup per dwelling. The by-laws also state, in Article 7, Section 1, that a membership in CWUA may be transferred.

Montana Mining owns a water hookup that is not in use at the present time, and had agreed to transfer it to the Roes. However, CWUA refused to allow this transfer, stating that its by-laws require approval by all of its members to transfer an unused water hookup. CWUA also stated that its by-laws authorize only one hookup per person. However, there are other individual members of CWUA who have more than one water hookup.

On July 29, 1992, the Roes filed their complaint alleging that CWUA's actions: breached its by-laws; constituted negligence; and that these actions breached a fiduciary duty owed to all of its members, including the Roes. In their complaint, the Roes requested permanent and temporary relief, which included access to the Corbin water system for both of their properties. On August 5, 1992, CWUA filed a motion for summary judgment in which it alleged that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law.

On March 3, 1993, the Roes filed an amended complaint adding the Department of State Lands as a defendant. (The Roes later dismissed the Department of State Lands from their lawsuit). CWUA then filed a motion to strike. The District Court, during a

telephonic pretrial conference, advised the parties that both pending motions were dismissed.

On July 15, 1993, CWUA filed a second motion for summary judgment. On August 3, 1993, the District Court granted CWUA's motion.

## DISCUSSION

Did the District Court err when it granted CWUA's motion for summary judgment?

The standard of review of a district court's summary judgment ruling is identical to that of a trial court's. It is a *de novo* review. *Cooper% Sisters of Charity* (Mont. 1994), 875 P.2d 352, 353, 51 St. Rep. 484, 485 (citing *Minnie v. City of Roundup* (1993), 257 Mont. 429, 431, 849 P.2d 212, 214). We have held that "[s]ummary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c), M.R.Civ.P." *Spain-Morrow Ranch, Inc. v. West* (Mont. 1994), 872 P.2d 330, 331-32, 51 St. Rep. 363, 364.

In its order granting CWUA's motion for summary judgment, the District Court stated that CWUA complied with its by-laws and that:

> The original by-laws, contained no specific restrictions on the simultaneous use of double hook-ups by a single member or the transfer of memberships. This does not mean, however, that the Association did not have the discretion or authority to restrict simultaneous use *or* transfers of membership.

We conclude, however, that the District Court improperly decided disputed issues of fact.

4

CWUA's present by-laws, enacted in 1990, allow for memberships in the CWUA to be transferred. Article 9, Section 1, of CWUA's by-laws states that "[t]he membership shall be transferable, in the event of an increase in membership fees, and the recipient will pay the difference."

CWUA argues that even though its memberships are transferable, it has the right to limit the total number of hookups and to require 100 percent member approval of new hookups. Thus, CWUA argues that it can require the Roes to obtain the approval of CWUA members for the hookup to the Roes' second lot.

It appears, however, that CWUA has overlooked important language in its own by-laws which state that the 100 percent vote of the members is required for a new service hookup, not for the transfer of unused hookups. Article 7, Section 4, of CWUA's by-laws discusses water and hookup limits. This section states in part that:

> The Association limits the total number of hook-ups to the system not to exceed the existing original seventeen (17) hook-ups. If any unused hook-ups are put into service, the service dues will be due in advance in a semi annual or annual payment, which is the present method of payment. Any new service or hook-up by the Association may only be added with a 100 (one hundred) percent of the vote of the members.

CWUA refers to the Roes' request for a second hookup as a new hookup. This is inaccurate. The hookup that the Roes requested involves an unused hookup which would be transferred to them from Montana Mines--not a new hookup. According to the by-laws, it should be put into service after the Roes pay service dues. An

5

unused, transferred hookup does not require authorization of 100 percent of CWUA's members.

However, there remain factual issues regarding what constitutes a dwelling and whether there is any specific limitation on the number of hookups per dwelling. Therefore, there appear to be genuine issues of material fact, and CWUA, as the moving party, is not entitled to judgment as a matter of law. As we stated in *Edgewater Town House Home Owners Ass'n v. Holtman* (1993), 256 Mont. 182, 185, 845 P.2d 1224, 1226, "[s]ummary judgment was not intended, nor can it be used, as a substitute for existing methods in the trial of issues of fact." (Citing *Hull v. D. Irvin Transport Ltd.* (1984), 213 Mont. 75, 81, 690 P.2d 414, 417.)

We conclude that the District Court erred in granting summary judgment.

The judgment of the District Court is reversed and this case is remanded for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices