SOURDOUGH DEVELOPMENT SER-VICES, INC., d/b/a Big Game Alaska, G. Michael Miller, and Doug Drum, Appellants,

v.

James W. RILEY, Michael J. Schachle, and J. Michael Schachle, Appellees.

No. S–10801.

Supreme Court of Alaska.

Feb. 20, 2004.

Barton M. Tiernan, The Law Offices of Barton M. Tiernan, Anchorage, for Appellants.

Michael A. Grisham, Patton Boggs LLP, Anchorage, for Appellees.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Parties to a lawsuit disputed control of a closely held corporation. When parties alleged corporate mismanagement and requested dissolution, the trial court appointed a receiver to manage the corporation. After the court conducted a bench trial and resolved one issue, the shareholders and the corporation entered into a settlement agreement. The parties who prevailed at trial argue here that the superior court erred by declining to assess the receivership expenses against the other shareholders as a litigation cost under Alaska Civil Rule 79. We conclude that this dispute is resolved by the settlement agreement. The controlling passage of the agreement is section 9, which required the corporation to pay these expenses, rather than section 8, which generally permitted parties to seek litigation costs under Rule 79. We therefore affirm.

## II. FACTS AND PROCEEDINGS

This case arises out of a series of disputes between two groups of shareholders of Sourdough Development Services, Inc., d/b/a Big Game Alaska (Sourdough), a closely held corporation operating a wildlife park in Portage. The underlying substantive issues material to the deterioration of the business relationship are disputed by the parties but are not relevant to the issues in this appeal.

The underlying legal dispute involved the effect of two agreements. A 1992 agreement between family shareholders James W. Riley, J. Michael Schachle, Michael J. Schachle, and G. Michael Miller established the number of shares issued to each shareholder, and designated each of the four shareholders a director of the corporation.

In 1993 G. Michael Miller and James W. Riley, respectively president and secretary of Sourdough, on behalf of Sourdough entered into a partnership agreement with Doug Drum. Per the 1993 partnership agreement, Drum sold $50,000 in personal property to Sourdough in return for ten percent stock ownership in Sourdough.

Disputes arose between the shareholders regarding Sourdough's management. Sourdough, acting through Miller in his capacity as president, filed a complaint in 1998 against Riley, alleging breach of fiduciary duty, misappropriation of funds, and conversion. Riley, Michael J. Schachle, and J. Michael Schachle, acting individually and derivatively on behalf of Sourdough, asserted claims against third-party defendants Miller and Drum. The Riley–Schachle answer and third-party complaint requested the dismissal of Sourdough's complaint against Riley, sought an order rescinding the 1993 partnership agreement with Drum, and requested a declaration that Sourdough's board of directors consist only of Riley, Miller, and the Schachles. The third-party complaint alternatively requested that the corporation be involuntarily dissolved, and that the court appoint a receiver for the corporation pending resolution of the request for involuntary dissolution.

Hoping to avoid a formal receivership, Miller, acting for Sourdough, entered into a limited financial receivership agreement with CPA Eileen Zaiser in July 1998. In September 1998 Superior Court Judge Sen K. Tan formally appointed Zaiser receiver, granting her authority "to ... manage the business and affairs" of Sourdough pending the hearing and determination of the dissolution complaint. The court observed that "unless a receiver ... is appointed, the interests of the corporation and its shareholders will suffer."

After conducting a two-day bench trial addressing one of the claims, the superior court ruled in favor of Sourdough, Miller, and Drum; the court found that the 1992 shareholder agreement was unenforceable because there was no mutual assent by all shareholders. The court reserved the remaining claims in the lawsuit. The remaining claims were to be tried in September 1999.

In June 1999 Sourdough (acting through the court-appointed receiver), Riley, Miller, Drum, and the Schachles agreed to settle the remaining claims. The parties agreed to dismiss all pending claims and to release each party from "any and all claims ... that arise out of or relate to any of the matters asserted in ... any actual or proposed pleadings

submitted in the Lawsuit, or any matters that could have been asserted in the Lawsuit, or any actions taken pursuant to and in furtherance of [the] Agreement." Section 8 of the settlement agreement allowed the parties to seek attorney's fees under Alaska Civil Rule 82 and costs under Alaska Civil Rule 79.[1]

The settlement agreement also gave Miller and Drum the option of having Sourdough buy the shares owned by Riley and the Schachles, following a valuation of the business. If Miller and Drum did not timely exercise their buy-out option, the settlement agreement gave Riley and the Schachles the option of having Sourdough purchase the shares owned by Miller and Drum. If neither group of shareholders timely exercised its buy-out option, the settlement agreement required the superior court to involuntarily dissolve the corporation.

The settlement agreement also provided that the receiver would continue to manage Sourdough's business and affairs until a buy-out or dissolution. Section 9 of the settlement agreement provided that the receiver "shall retain sufficient funds of the corporation to pay all expenses of the receivership and the Receiver shall then transfer all other assets, books and records of the corporation to the persons who are assuming responsibility for the corporation." The superior court approved the settlement agreement in September 1999.

Per the settlement agreement, Miller and Drum tendered money to purchase the shares of Riley and the Schachles. In May 2001, after the receiver conducted a final accounting, Judge Tan approved the final accounting, authorized payment of the receiver's final fees from corporate funds, and discharged the receiver.

In December 2000 plaintiff Sourdough and third-party defendants Miller and Drum filed a motion asking the court to enter a final judgment in their favor on their theory that they prevailed on the only issue the superior court had ruled on—the unenforceability of the 1992 shareholder agreement. Arguing that they were the prevailing parties, they also moved for an award of attorney's fees and costs.

The superior court issued an "Order of Final Judgment" in 2002; the order ended the litigation per the parties' settlement agreement, dismissed all claims with prejudice, and stated that Miller, Drum, and Sourdough were the prevailing parties in the first part of the dispute. The order also stated that "[a]lthough it is not possible to infer at this stage who would have prevailed on what issues at the second trial, this court finds that whether there was an enforceable agreement was clearly one primary issue in the case. On that issue, plaintiffs prevailed."

After hearing oral argument, the superior court issued an order addressing attorney's fees and costs; it held that although Miller and Drum had prevailed on one issue at trial, the court could not find that only one party prevailed in the ensuing settlement. The court therefore awarded Miller and Drum attorney's fees of $9,504, fifteen percent of the attorney's fees they had incurred through the end of trial, and awarded no attorney's fees to Miller and Drum for "phase two" of the case, after trial.

Miller and Drum's attorney submitted a cost bill for Rule 79 costs totaling $163,553.57. Citing Rule 79(f)(15), the cost bill included the receiver's fees and the fees charged by her attorney as "other costs allowed by statute." Those fees and expenses apparently totaled more than $120,000 as of February 2002. The superior court held that all receivership expenses were to be paid by Sourdough, and should not be taxable to either party. The court found that Miller and Drum were only entitled to Rule 79 costs incurred through the end of the trial. After referring the cost bill to the clerk of court for a cost hearing, the superior court awarded Miller and Drum $5,524.59 in costs. The attorney's fees and cost awards were reduced to final judgment, and have been satisfied.

Miller, Drum, and Sourdough appeal the superior court's order regarding attorney's

---

1. Rule 79(a) entitles "the prevailing party" to recover certain litigation costs "necessarily incurred in the action." Rule 82 generally allows the prevailing party to recover partial attorney's fees.

fees and costs. For the purposes of this appeal, we refer to the appellants collectively as "Sourdough." Although the order from which Sourdough appeals also includes a ruling on attorney's fees, Sourdough only challenges the superior court's failure to require Riley and the Schachles to bear the receivership fees and expenses as litigation costs taxable under Rule 79.

## III. DISCUSSION

### A. Standard of Review

█ Normally we review a trial court's Rule 79 award of litigation costs for an abuse of discretion; demonstrating an abuse of discretion requires a showing that the award "was arbitrary, capricious, manifestly unreasonable, or improperly motivated."[2] The dispositive issue here, however, is whether the settlement agreement permits receivership expenses to be awarded as Rule 79 costs. This issue turns on contract interpretation. We apply our independent judgment to matters of contract interpretation.[3]

### B. The Settlement Agreement Bars Sourdough's Claim that Receivership Expenses Should Be Paid by Riley and the Schachles as Litigation Costs Taxable Under Rule 79.

█ Sourdough advances multiple reasons to support its contention that the superior court erred by failing to order Riley and the Schachles to bear the receivership expenses as litigation costs under Rule 79. Most, if not all, of its reasons implicate the merits of the parties' disputes and the propriety of ordering a receivership. Thus, Sourdough argues that Riley and the Schachles should pay the receivership expenses as Rule 79 litigation costs because they were the proponents of the receivership and the receivership was improper and improvident. It likewise argues that the receivership was compelled by Riley and the Schachles' claim that the 1992 shareholder agreement was enforceable. It argues that because that claim was based on what it

calls "unsubstantiated [and] embellished allegations" and because the superior court ruled in Sourdough's favor by holding that the 1992 shareholder agreement was unenforceable, the receivership was improper.

Sourdough similarly claims that the receivership was intended to sequester Sourdough's assets, that the receivership conferred no benefit on Sourdough, and that the receivership was improperly continued. Sourdough further argues that Riley and the Schachles acted with improper motives, and that they "wrongfully necessitated" the receivership.

In support of its claim of error, Sourdough cites cases from other jurisdictions in which courts taxed the receiver's expenses to the party responsible for the receivership when the appointment of the receiver was held to be erroneous, or when the party compelled the receivership based on unsubstantiated claims. Sourdough also argues that Rule 79 allows parties to recover receivership expenses as litigation costs.

As Riley and the Schachles correctly assert, these potential grounds for relief are precluded by the settlement agreement. That agreement ended the litigation and disposed of all claims arising from the lawsuit, "any matters that could have been asserted in the Lawsuit," and "any actions taken pursuant to and in furtherance of [the] Agreement." The grounds Sourdough raises for awarding these costs would have required the superior court to dive back into the merits of the parties' disputes, some of which raised potentially complex and vigorously contested factual issues. That course would have forced the parties to litigate the merits of many of the substantive issues that they were attempting to resolve by entering into the settlement agreement. When the parties entered into the settlement agreement they intended to end the litigation, not prolong it. The timing of the agreement, on the eve of the second trial, suggests that the parties intended a universal settlement of all remaining disputes, many of which revolved around

**2.** *Fernandes v. Portwine,* 56 P.3d 1, 4–5 (Alaska 2002); *Kellis v. Crites,* 20 P.3d 1112, 1113 (Alaska 2001).

**3.** *Holderness v. State Farm Fire & Cas. Co.,* 24 P.3d 1235, 1237–38 (Alaska 2001).

Sourdough's attempts to terminate or modify the receivership. Consequently, the principal arguments Sourdough advances for finding error are completely unavailing and are barred by the settlement agreement. If Sourdough wanted to litigate these issues, it should not have entered into the settlement agreement.

Although its appellate briefs are largely devoted to elaborating on the arguments discussed and rejected above, Sourdough's opening brief also seems to argue that the superior court should have awarded the receivership expenses against Riley and the Schachles simply because they were litigation costs recoverable under Rule 79. Sourdough's opening brief completely fails to address the real question inherent in such an argument: whether section 9 of the settlement agreement has the effect of precluding a Rule 79 award of the receivership expenses against Riley and the Schachles. Riley and the Schachles discuss that question in their appellees' brief and Sourdough's reply brief contains a short response. Sourdough there argues that the parties did not truly "agree" that the corporation would bear the costs of the receivership because section 9 came from a provision included in the superior court's order appointing the receiver. That order provided that the receiver should provide notice before "transferring corporate funds ... to pay for her receivership fees." Sourdough therefore asserts in its reply brief that the settlement agreement only specifies that the receiver would be paid by the corporation because the parties could not, and did not, modify the court order. It also contends that "there is no probative evidence of any agreements that the Corporation pay any litigation costs and in fact the same was specifically reserved for a post-litigation cost application in the Settlement Agreement Stipulation filed with the [c]ourt."

Section ·8 of the settlement agreement provides in part:

> *Attorneys' Fees and Costs.* Any party may file with the Superior Court a motion seeking an award of attorneys' fees under Rule 82 and an award of costs under Rule 79. Nothing in this Agreement is intended to foreclose an award of Rule 82 attorneys' fees or Rule 79 costs. In deciding any motion for Rule 82 attorneys' fees and any motion for Rule 79 costs, the Superior Court may consider, as it deems appropriate, the results achieved through the Lawsuit as well as the outcome provided for in this Agreement.

Section 9 of the settlement agreement provides:

> *Receivership.* If Sourdough buys the shares Riley, Schachle Sr. and Schachle Jr. own as is provided in Section 2 above, or if Sourdough buys the shares Miller and Drum own as is provided in Section 3 above, the receivership shall automatically terminate without further order of the Superior Court upon the closing of the purchase transaction. *The Receiver shall retain sufficient funds of the corporation to pay all expenses of the receivership* and the Receiver shall then transfer all other assets, books and records of the corporation to the persons who are assuming responsibility for the corporation. The Receiver shall file a final report and accounting with the Superior Court, and upon the approval of the final report and accounting, the Superior Court shall enter an appropriate final judgment terminating the Lawsuit. If neither of the stock purchases contemplated by Section 2[or] Section 3 occur[s], the receivership shall continue until it is terminated by order of the Superior Court.

(Emphasis added.)

The controlling question is which section controls. Is it section 9—which deals with the receivership expenses—or is it section 8—which reserves to the parties an opportunity to seek Rule 82 attorney's fees and Rule 79 litigation costs?

■ A settlement agreement that fulfills basic contract principles is binding on the parties to the agreement.[4] Sourdough claims that it only agreed to include section 9 because of the presence of a similar provision in a court order. But this is not a valid reason for either misinterpreting the section or ex-

---

4. *Dickerson v. Williams,* 956 P.2d 458, 463 (Alaska 1998).

cusing Sourdough from the effect of the provision. Sourdough does not attack the validity of the settlement agreement or section 9; it does not claim that the settlement agreement is unenforceable or is invalid or that duress, coercion, or fraud caused Sourdough to enter into the agreement. The settlement agreement's inclusion of a provision consistent with a provision in the superior court's order appointing the receiver does not nullify Sourdough's (and Miller and Drum's) assent to the settlement agreement. Nor does it excuse Sourdough from abiding by the terms of a valid settlement agreement.

■ When interpreting a contract, such as the settlement agreement in this case, it is our duty to give effect to the intentions of the parties.[5] To determine their intentions, we look to the words of the contract and any extrinsic evidence regarding the parties' intentions when they entered into the contract.[6]

We read section 9 to be the more specific provision with regard to receivership expenses.[7] Section 9 specifies that upon termination, the receiver "shall retain sufficient funds of the corporation to pay all expenses of the receivership and the Receiver shall then transfer all other assets, books and records of the corporation to the persons who are assuming responsibility for the corporation." Section 8 provides that the parties may seek litigation costs under Rule 79, but says nothing about receivership expenses. We therefore read the general reservation in section 8 to be the less specific provision with respect to receivership expenses. Section 9 clearly enough allocates those expenses to the corporation, one of the parties in the lawsuit, and one of the signatories to the settlement agreement.

Sourdough has not convinced us that section 8, rather than section 9, governs the receivership expenses. Sourdough has not referred us to any extrinsic evidence that would compel or support a different interpretation of sections 8 and 9. The settlement agreement stipulation, contrary to Sourdough's contention on appeal, provides no assistance in interpreting the terms of the agreement.[8] That an earlier order is similar to section 9 does not convince us, as Sourdough contends, that the parties intended to allow the superior court to award the receivership expenses against some of the parties as a litigation cost. To the contrary, it would be remarkable to think that parties entering into a settlement agreement on the eve of trial would mutually agree that the court could award the very large receivership expenses against individual shareholders. Given the buy-out scheme underlying the settlement agreement, the presumption that the receivership benefitted the corporation, and the parties' knowledge of the expense of the receivership, we see no basis for thinking that the parties intended to treat these expenses as an awardable Rule 79 cost. That is especially so if resolution of the cost application would have required the superior court to resolve the merits of claims which the parties thought they were settling on the eve of trial.

We therefore hold that the settlement agreement bars Sourdough's claim of error. Our holding precludes Sourdough's argument that because the receivership was improper and improvident, Riley and the Schachles should bear the receivership expenses. This holding makes it unnecessary for us to decide generally whether receivership expenses are recoverable as allowable costs under Rule 79.[9]

5.  *Exxon Corp. v. State,* 40 P.3d 786, 793 (Alaska 2001).

6.  *Sprucewood Inv. Corp. v. Alaska Hous. Fin. Corp.,* 33 P.3d 1156, 1162 (Alaska 2001).

7.  As a matter of contract construction, "specific terms and exact terms are given greater weight than general language." 5 Margaret N. Kniffin, Corbin on Contracts § 24.23, at 253 (1998) (quoting Restatement (Second) of Contracts § 203(c) (1981)); *see also McGary v. Westlake Investors,* 99 Wash.2d 280, 661 P.2d 971, 974 (1983) (en banc)

(stating that specific language of lease addendum must prevail over general terms of lease provision).

8.  The relevant words of the stipulation ("the parties may move for costs") are no more specific than section 8 of the settlement agreement.

9.  Our reliance on the settlement agreement also makes it unnecessary to decide what effect AS 10.06.643(c) might have on this appeal. That statute provides that the compensation of a re-

## IV. CONCLUSION

We therefore AFFIRM the superior court's order declining to tax the receivership expenses as Rule 79 litigation costs.

ceiver appointed to manage the affairs of a corporation undergoing dissolution "shall be paid out of the assets of the corporation and unless otherwise agreed shall be fixed by the court."