Kevin O'CONNELL, Appellant,

v.

Anthony WILL and Paulette Will, Appellees.

No. S-13540.

Supreme Court of Alaska.

Oct. 28, 2011.

---

Yale H. Metzger, Law Offices of Yale H. Metzger, Anchorage, for Appellant.

No appearance by Appellees.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

## OPINION

STOWERS, Justice.

## I. INTRODUCTION

In 2002 Kevin O'Connell was awarded damages against Anthony and Paulette Will for the Wills' failure to pay a promissory note. Under the attorney's fee provision in the note, O'Connell was also awarded full attorney's fees and costs. After O'Connell's attorney engaged in post-judgment collection efforts, Anthony Will paid the judgment. In 2009 Anthony Will filed a request for an order that the judgment in the case had been satisfied, and the superior court granted the motion. O'Connell filed a motion seeking a further award of attorney's fees, arguing that he incurred attorney's fees in collecting the original judgment and that under the terms of the promissory note he is entitled to an additional award for those fees. The superior court denied his motion and O'Connell appeals. He also argues that the superior court should not have considered Anthony Will's motion for entry of a satisfaction of judgment because Anthony failed to serve Paulette Will, Anthony's ex-wife, with the motion. Because the promissory note's terms did entitle O'Connell to post-judgment fees, we reverse the superior court's order denying O'Connell's motion for attorney's fees. The superior court did not err in considering Anthony Will's motion, but because

O'Connell was entitled to post-judgment attorney's fees, we vacate the superior court's entry of an order that the judgment was satisfied and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

In October 1999 Anthony and Paulette Will signed a promissory note for $7,000 payable to Kevin O'Connell. The note provided that $3,500 was due on or before October 30, 2000 and $3,500 was due on or before October 30, 2001. Further, the note provided that "in the event default shall be made in the payment of any installment, then the principal sum shall be and become at once due and payable at the option of the holder." By signing the note, Anthony and Paulette Will also "promise[d], in case suit is instituted, to collect this note, or any portion thereof, in addition to the costs and disbursements of said suit, a reasonable attorney's fee in such suit or action."

In November 2000 O'Connell filed this lawsuit to enforce the promissory note against the Wills. The Wills contested the lawsuit. O'Connell filed a motion for summary judgment, and Superior Court Judge Sharon Gleason granted that motion. On September 26, 2002, the superior court entered final judgment against the Wills for $7,000 plus $6,492.50 in attorney's fees and $219.86 in costs, for a total judgment of $13,712.36.[1]

Anthony Will subsequently paid the judgment after O'Connell, through counsel, conducted a search for assets and executed a garnishment of earnings. In March 2009 Anthony Will filed a motion for an order that the judgment in the case was satisfied. O'Connell opposed the motion on the grounds that it had not been served on Paulette Will[2]

as required by Alaska Civil Rule 5 and that he had incurred additional attorney's fees in the course of collecting on the original judgment. The superior court granted Anthony Will's motion. O'Connell filed a motion for reconsideration, which was denied. Addressing O'Connell's argument regarding service on Paulette Will, the superior court explained that "since the motion sought relief that was of benefit to Ms. Will, service of the motion upon her by Mr. Will is unnecessary" and "[r]equiring Mr. Will, a pro se litigant, to comply with that rule in these circumstances would elevate form far over substance." As to O'Connell's claim for attorney's fees, the superior court explained that "[t]he parties' contract is reasonably interpreted to permit the recovery of full attorney's fees during the course of the action—not during collection on any judgment—particularly where, as here, the plaintiff has already been awarded $6,492.50 of fees on a principal note due of $7,000." O'Connell appeals.

## III. STANDARD OF REVIEW

■■■ We review trial court orders regarding violations of Civil Rule 5 for abuse of discretion.[3] We usually review an award of attorney's fees for abuse of discretion.[4] Abuse of discretion exists only "if the award is arbitrary, capricious, manifestly unreasonable, or the result of an improper motive."[5] Here, however, the dispositive issue is whether the promissory note allowed recovery of attorney's fees incurred during collection on the judgment. This is a question of contract interpretation, and we apply our independent judgment to matters of contract interpretation.[6]

---

1. On June 28, 2002, the superior court first entered judgment for $7,219.86. On September 26, the court amended the judgment by adding the attorney's fees.

2. As O'Connell's opposition stated, "Anthony Will represented ... that he and Paulette Will are divorced and that she was not served with a copy of his request." The opposition appears to have been served on both Anthony Will and Paulette Will.

3. See, e.g., Murat v. F/V Shelikof Strait, 793 P.2d 69, 73–74 (Alaska 1990) (applying abuse of dis-

cretion standard where plaintiffs served corporate officers, rather than the corporation's attorney of record, with motion for default judgment).

4. Reid v. Williams, 964 P.2d 453, 460 n. 17 (Alaska 1998).

5. Id. (quoting Hughes v. Foster Wheeler Co., 932 P.2d 784, 793 (Alaska 1997)).

6. Sourdough Dev. Servs., Inc. v. Riley, 85 P.3d 463, 466 (Alaska 2004).

## IV. DISCUSSION

### A. The Superior Court Did Not Err In Considering The Motion For An Order Of Satisfaction Of Judgment Despite The Defect In Service.

On March 16, 2009, after payment of the $13,712.36 judgment against the Wills for both the amount owed on the note and attorney's fees incurred until the superior court's grant of summary judgment, Anthony Will requested that the superior court issue an order that the judgment had been satisfied. O'Connell opposed the motion, in part because Anthony Will had failed to serve Paulette Will, his ex-wife and co-defendant. The superior court rejected O'Connell's argument, concluding in its denial of O'Connell's motion for reconsideration that service on Paulette Will was unnecessary because the motion would benefit her and that "requiring [Anthony] Will, a pro se litigant, to comply with that rule in these circumstances would elevate form far over substance." On appeal, O'Connell argues that the superior court's decision to consider the motion without first requiring service on Paulette Will is reversible error.

### 1. O'Connell does not have standing to assert any argument Paulette Will might have for failure of service.

 Although the question whether a party can object to another party's defective service on a third party is a question of first impression in Alaska, the general rule is that such a party cannot object.[7] For example, the Montana Supreme Court explained that "questions of defective service of process may be raised only by the one on whom attempted service was made."[8] This rule

comports with Alaska's principles of standing, and we choose to follow it. We have held that to establish interest-injury standing to bring a claim, parties "must demonstrate that they have a sufficient personal stake in the outcome of the controversy and an interest which is adversely affected by the complained-of conduct. The degree of the injury need not be great: an identifiable trifle is sufficient to establish standing to fight out a question of principle."[9] Where a party does not have standing to bring a claim, the claim must be dismissed.[10]

O'Connell does not have standing to argue that Anthony Will's failure to serve Paulette Will required the superior court not to consider Anthony Will's motion. In his briefing, O'Connell does not identify any possible personal interest that would be adversely affected by the superior court's consideration of Anthony Will's motion before Paulette Will was properly served. He argues that proper service was important in this case because Paulette Will "might have an indemnity claim against her co-defendant which could have potentially been negatively [a]ffected by the relief sought by [Anthony] Will." While this may be true, it suggests potential injury to Paulette Will, not injury to O'Connell.

### 2. The superior court did not abuse its discretion by considering Anthony Will's motion even though Paulette Will had not been served.

 Alaska Rule of Civil Procedure 5(a) provides that "written motion[s] other than [those] which may be heard ex parte ... shall be served upon each of the parties." Moreover, notice of a motion "should be

---

7. *See, e.g., Meadows of Citrus Cnty., Inc. v. Jones*, 704 So.2d 202, 203 (Fla.App.1998) ("[Defendants] lack standing to assert the alleged untimely service of process on a co-defendant and this appeal is accordingly dismissed."); *In re Estate of Stanford*, 221 Ill.App.3d 154, 163 Ill.Dec. 688, 581 N.E.2d 842, 848 (1991) ("Where a party was given notice, he cannot complain that others were not notified."); *Superior Outdoor Advert. Co. v. State Highway Comm'n of Missouri*, 641 S.W.2d 480, 483 (Mo.App.1982) ("[T]he general rule is that the issue of defective service of process may be raised only by the one on whom the attempted service was made ...."); *see also* 72

C.J.S. *Process* § 123 (2011) ("As a general rule, the question of defective service may be raised only by the one on whom attempted service has been made.").

8. *Hull v. D. Irvin Transp. Ltd.*, 213 Mont. 75, 690 P.2d 414,.417 (1984).

9. *Keller v. French*, 205 P.3d 299, 304–05 (Alaska 2009) (internal quotation marks and citations omitted).

10. *Id.* at 305.

served on a co-party whose rights are affected by the motion." [11]

Although we have not articulated a specific standard for deciding whether to set aside a trial court's order on the basis of lack of complete service of a motion, we have used an abuse of discretion standard for deciding whether to set aside a trial court's order on the basis of defective service. In *Murat v. F/V Shelikof Strait,* we interpreted our prior decisions to stand for the rule that "mere service on a party rather than on a party's attorney in violation of the civil rules will not render a judgment void, but will instead subject it to possible reversal based on the particular circumstances of the individual case." [12] In *Murat,* the plaintiffs had served the corporation's officers, rather than the corporation's attorney of record.[13] We explained that "[i]t appear[ed] highly unlikely that [the attorney], even if he had been served, would have taken any action whatsoever" and noted that the attorney had already moved to withdraw from the case and "had repeatedly failed to take any action on the earlier discovery requests." [14] We concluded that the trial court did not abuse its discretion by entering default judgment against the corporation for failure to comply with discovery and we declined to set aside the default judgment.[15]

Under the abuse of discretion standard as applied in *Murat,* the superior court in this case did not abuse its discretion in considering Anthony Will's motion despite his failure to serve Paulette Will. As in *Murat,* it appears highly unlikely that Paulette Will would have taken action on Anthony Will's motion even if she had been properly served. Indeed, she did not take any action on the matter after receiving O'Connell's opposition or motion for reconsideration and, despite ample notice, she has not taken any action on O'Connell's appeal.

Although we conclude that the superior court did not err in considering Anthony Will's motion, because we conclude that O'Connell is entitled to post-judgment attorney's fees, as explained in part B below, we vacate the superior court's order that the judgment was satisfied, and remand for further proceedings.

### B. O'Connell Is Entitled To Post–Judgment Attorney's Fees.

■ In response to Will's motion for an order acknowledging satisfaction of the judgment, O'Connell sought $2,397.50 in attorney's fees and $45.00 in costs. O'Connell's attorney charged $2,397.50 in fees and $45.00 in costs to place liens on the Wills' assets and to serve Anthony Will's employer with a writ of garnishment. The superior court held that O'Connell was not entitled to post-judgment attorney's fees under the parties' promissory note, which it found was "reasonably interpreted to permit the recovery of full attorney's fees during the course of the action—not during collection on any judgment—particularly where, as here, the plaintiff has already been awarded $6,492.50 of fees on a principal note due of $7,000." We disagree and hold that O'Connell can recover reasonable post-judgment attorney's fees and costs under his contract with the Wills.

When interpreting contracts, our duty is to "ascertain and give effect to the reasonable intentions of the contracting parties." [16] We determine the intention of contracting parties by "resort[ing] to the language of the disputed provision and other provisions, relevant extrinsic evidence, and case law interpreting similar provisions." [17] We seek to interpret contractual terms harmoniously, "avoiding those interpretations that cause conflicts among the provisions." [18]

11. *See* 60 C.J.S. *Motions and Orders* § 18 (2011).

12. 793 P.2d 69, 73 (Alaska 1990).

13. *Id.* at 72–73.

14. *Id.* at 73–74.

15. *Id.* at 71, 74.

16. *Estate of Polushkin ex rel. Polushkin v. Maw,* 170 P.3d 162, 167 (Alaska 2007) (quoting *W. Pioneer, Inc. v. Harbor Enters., Inc.,* 818 P.2d 654, 656 (Alaska 1991)).

17. *W. Pioneer, Inc.,* 818 P.2d at 656.

18. *Rockstad v. Global Fin. & Inv. Co.,* 41 P.3d 583, 586–87 (Alaska 2002).

The plain language of the contract supports a finding that the parties intended to provide for reimbursement of all attorney's fees incurred in a "suit or action" to collect the note, including those incurred through post-judgment enforcement actions. The contract between O'Connell and the Wills provides that the signatories "promise[ ], in case suit is instituted, to collect this note, or any portion thereof, in addition to the costs and disbursements of said suit, a *reasonable attorney's fee in such suit or action.*" (emphasis added) Black's Law Dictionary defines "suit" as "[a]ny proceeding by a party or parties against another in a court of law," [19] "action at law" as "[a] civil suit stating a legal cause of action and seeking only a legal remedy," [20] and "action" as "[t]he process of doing something; conduct or behavior." [21] Black's also states that the word "proceeding" is "used to express the business done in courts," which may include "all ancillary or provisional steps, such as arrest, attachment of property, garnishment, injunction, writ of *ne exeat* … [and] *the enforcement of the judgment,* or a new trial, as may be directed by the court of last resort." [22] Applying these definitions, the plain language of the contract indicates that the parties intended to provide for all reasonable attorney's fees incurred by O'Connell for services performed for him by his lawyer in engaging in further proceedings to collect the note, including enforcing the judgment rendered against the Wills.

This interpretation of the contract's language is also consistent with our precedent regarding contractual attorney's fees clauses. In *Gamble v. Northstore Partnership,* we held that where a contractual provision has the "evident purpose of shifting reasonable [attorney's] fees to the winner in litigation concerning [a] contract," the contract must be construed as calling for fee shifting "at all court levels." [23] We also stated that "the primary concern in setting rules for attorney fee awards must be the encouragement of efficient litigation." [24] *Gamble* thus stands for the proposition that we construe contractual attorney's fees provisions broadly, and in a way that encourages efficient litigation.

In *Rockstad v. Erikson,* we reiterated our holding in *Gamble* that, where the parties intend it, contractual attorney's fees clauses must be construed as calling for fee shifting at all levels "and not just in proceedings before the trial court," [25] and concluded that an attorney's fees provision in a note and deed of trust included fees incurred in "post-judgment appellate proceedings." [26] Although we were not presented with the question whether the note in *Rockstad* also provided for attorney's fees incurred during post-judgment enforcement actions, our holding in *Rockstad* supports our conclusion that the attorney's fees provision in the note between O'Connell and the Wills provided for attorney's fees incurred post-judgment to enforce the judgment. To hold otherwise would require us to artificially distinguish attorney's fees incurred for post-judgment appellate proceedings from attorney's fees incurred for post-judgment enforcement proceedings, and would in many cases eviscerate the evident purpose of contractual attorney's fees clauses like the one at issue. When a contract between two parties indicates that the parties intended to shift reasonable attorney's fees to the winner in litigation concerning the contract, interpreting that contract to require the losing party to pay all attorney's fees except for fees incurred while attempting to enforce the judgment—a cost that is only incurred when the losing party refuses to pay after a judgment has been rendered against him—would be entirely contrary to the essential purpose of such a clause.

Our conclusion is also consistent with Alaska's Civil Rule 82 and our precedent re-

**19.** BLACK'S LAW DICTIONARY 1572 (9th ed. 2009).

**20.** *Id.* at 33.

**21.** *Id.* at 32.

**22.** *Id.* at 1324 (emphasis added).

**23.** 28 P.3d 286, 290 (Alaska 2001).

**24.** *Id.* at 291 (quoting *Presley of S. Cal. v. Whelan,* 146 Cal.App.3d 959, 196 Cal.Rptr. 1, 3 (1983)).

**25.** 113 P.3d 1215, 1224 (Alaska 2005).

**26.** *Id.*

garding that rule. Alaska rejects the American rule for attorney's fees, that is, the rule that litigants pay their own fees.[27] Instead, Alaska's Civil Rule 82 provides for partial fee-shifting in most civil cases absent any agreement between contracting parties[28] for "services performed up to the time of the judgment."[29] In *Rockstad,* however, we concluded that "where a contract between the parties allows for one party to recover attorney's fees in the event of litigation, 'the contract provision must prevail over any limitations otherwise imposed by Rule 82.'"[30] When parties include a provision for attorney's fees in their contract, they draft that provision in the shadow of Rule 82, and it is logical to infer that the intent behind a contractual attorney's fees clause is therefore to provide for attorney's fees that are not otherwise provided by Rule 82. But Rule 82 has two limitations: it provides generally for reimbursement of only partial attorney's fees, and it provides for reimbursement of attorney's fees for actions taken only up until the time of judgment.[31] Because there appears to be no principled basis for concluding that the contracting parties in this case intended to avoid one of Rule 82's limitations but not the other, we must conclude that the attorney's fees clause at issue, which provides for recovery of all reasonable attorney's fees incurred while collecting the note, was written with the intent of providing all reasonable attorney's fees for all actions taken to enforce the note, including collections actions taken after the final judgment was entered. As discussed above, this conclusion is consistent with and supported by our attorney's fee rules and precedent.

Finally, we note that construing contractual attorney's fees clauses to exclude attorney's fees incurred for post-judgment collection and enforcement proceedings would be inefficient and might stimulate further litiga-

tion. If we construed such clauses to exclude attorney's fees incurred while attempting to collect on a note through post-judgment enforcement proceedings, the prevailing party could alternatively file a separate lawsuit to enforce a judgment and then recover attorney's fees incurred for post-judgment enforcement actions in the new litigation. But filing a separate lawsuit to enforce a judgment rather than utilizing liens and other post-judgment enforcement mechanisms in an existing case results in greater economic costs to the parties and to judicial and court resources.

Because the plain language of the promissory note indicates that the parties intended to provide for attorney's fees incurred in all actions taken to collect on the note, and because our precedent regarding contractual attorney's fees clauses supports the conclusion that contractual attorney's fees clauses like the one at issue provide for attorney's fees incurred during post-judgment enforcement proceedings, we reverse the superior court's order denying O'Connell's motion for post-judgment attorney's fees, and remand for further proceedings.

## V. CONCLUSION

For the foregoing reasons, we VACATE the superior court's order for satisfaction of judgment, REVERSE the court's order denying post-judgment attorney's fees, and REMAND for further proceedings.

FABE, Justice, with whom CHRISTEN, Justice, joins, dissenting.

FABE, Justice, with whom CHRISTEN, Justice, joins, dissenting.

I disagree with the court's conclusion that the contract between O'Connell and the Wills authorizes the award of post-judgment collec-

**27.** *See, e.g., Hatch v. T & L Assocs.,* 319 N.J.Super. 644, 726 A.2d 308, 309 (N.J.Super.App.Div.1999) (discussing the "so-called American rule of litigants paying their own fees"); *see also* Susanne Di Pietro & Teresa W. Carns, *Alaska's English Rule: Attorney's Fee Shifting in Civil Cases,* 13 ALASKA L.REV. 33–94 (1996).

**28.** Alaska R. Civ. P. 82.

**29.** *Torrey v. Hamilton,* 872 P.2d 186, 187 (Alaska 1994).

**30.** 113 P.3d at 1224 (quoting *Ursin Seafoods, Inc. v. Keener Packing Co.,* 741 P.2d 1175, 1181 (Alaska 1987)).

**31.** Alaska Civil Rule 82(b); *see, e.g., Torrey,* 872 P.2d at 187.

tion costs. In my view, the attorney's fee provision in the contract simply does not contemplate these expenses. The contract provides that the signatories "promise[ ], in case suit is instituted, to collect this note, or any portion thereof, in addition to the costs and disbursements of said suit, a *reasonable attorney's fee in such suit or action ....*" (Emphasis added.) Because the phrase "reasonable attorney's fee in such suit or action" cannot be construed to include post-judgment collection costs, I respectfully dissent.

When interpreting contracts, we have stated that our "duty is to 'ascertain and give effect to the reasonable intentions of the contracting parties.' " [1] We determine the intention of contracting parties by "resort to the language of the disputed provision and other provisions, relevant extrinsic evidence, and case law interpreting similar provisions." [2]

I conclude that the term "attorney's fees," when examined using the traditional tools of contract interpretation, does not include collection costs. The addition in this contract of the qualifier "in such suit or action" makes me more certain of this conclusion. By referring to "such suit or action," the contract expressly provides only for attorney's fees incurred during the litigation of the action in the trial or appellate courts.

Black's Law Dictionary defines "suit" as "[a]ny proceeding by a party or parties against another in a court of law" [3] and "action at law" as "[a] civil suit stating a legal cause of action and seeking only a legal remedy." [4] The court reasons that Black's Law Dictionary defines "suit" as being a "proceeding" and that, under some definitions, "proceeding" has been defined to include "ancillary or provisional steps" such as enforcement of a judgment. The court therefore concludes that a "suit" can include post-judgment collection efforts. There are several flaws in this argument. Not every "proceeding" is a "suit." A "suit" does not include all "proceedings," only those "proceedings" that take place "in a court of law." [5] And even if post-judgment collection efforts can be classified as "proceedings," they are not "proceedings" that take place "in a court of law." The word "suit" is limited to the litigation of an actual lawsuit in the trial or appellate courts.

Treating "attorney's fees" as distinct from "costs of collection" is especially natural in Alaska. Alaska, unlike other jurisdictions, has a longstanding practice of awarding partial attorney's fees, first by statute and then by Civil Rule 82.[6] The phrase "attorney's fees" is therefore widely used in Alaska and has come to have a particular meaning here. When parties include a provision for attorney's fees in their contract, they draft that provision in the shadow of Rule 82.

In construing Rule 82's provision for "attorney's fees," we have given that term a specific and limited meaning, excluding other activities outside of litigation.[7] Civil Rule 82 fees "must relate solely to attorney's services performed in the case in which the judgment is entered." [8] We have limited fee awards for attorney's services to the "costs of the action" [9] and have expressly interpreted Civil Rule 82 to provide compensation "only ...

1. *Estate of Polushkin ex rel. Polushkin v. Maw*, 170 P.3d 162, 167 (Alaska 2007) (quoting *Western Pioneer, Inc. v. Harbor Enters., Inc.*, 818 P.2d 654, 656 (Alaska 1991)).

2. *Western Pioneer*, 818 P.2d at 656.

3. Black's Law Dictionary 1572 (9th ed. 2009).

4. *Id.* at 33.

5. *Id.* at 1152 (defining "suit" as "[a]ny proceeding by a party or parties against another *in a court of law* ") (emphasis added).

6. Teresa W. Carns & Susanne DiPietro, *Alaska's English Rule: Attorney's Fee Shifting in Civil Cases*, 13 Alaska L.Rev. 33, 39–40 (1996).

7. *Marsingill v. O'Malley*, 128 P.3d 151, 163 (Alaska 2006) ("[I]t was error to award attorney's fees for legislative work and for work related to the first appeal."); *Alaska State Hous. Auth. v. Riley Pleas, Inc.*, 586 P.2d 1244, 1249 (Alaska 1978) (declining to award attorney's fees for fees incurred in arbitration).

8. *Torrey v. Hamilton*, 872 P.2d 186, 187 (Alaska 1994).

9. *Cameron v. Hughes*, 825 P.2d 882, 887 (Alaska 1992) (quoting *O'Link v. O'Link*, 632 P.2d 225, 231 (Alaska 1981)), *limited by Torrey*, 872 P.2d at 188 n. 1.

for attorney's services performed up to the time of judgment."[10] And we have only made an exception to our rule that fees may not be awarded for collection efforts in cases involving the "collection of judgments for child support[, which] is a special subject to which special rules apply."[11] In *Torrey*, we also clarified that post-judgment attorney's fees may not be collected under the authority of Civil Rule 79: "Rule 79, like Rule 82, only relates to costs expended up to the time of judgment."[12]

This understanding of "attorney's fees" comports with the national understanding that "attorney's fees" and "costs of collections" are distinct terms. Accordingly, when parties use the term "attorney's fees" in their contract, they can be presumed to use that term as distinct from costs of collection. If contracting parties wish to allocate costs of collection, they can do so—but they must do it expressly.

Examining case law from other jurisdictions interpreting similar provisions confirms that attorney's fees are distinct from post-judgment collection costs. Many judicial decisions discussing the relationship between attorney's fees and post-judgment costs of collection have involved contracts that featured express provisions for both "attorney's fees" and "costs of collection."[13] The practice reflected in these decisions is that a separate provision for "costs of collection" needs to be added to a contract if such a provision is desired. The contracting parties in these cases and the courts that have reviewed similar clauses have referred to attorney's fees and costs of collection as distinct items.[14]

The court reasons that *Gamble v. Northstore Partnership*[15] counsels that we should construe contractual provisions for attorney's fees broadly and therefore concludes that the attorney's fee provision in this contract should be construed to include post-judgment collection costs. But while *Gamble* establishes that we should interpret contractual provisions for attorney's fees broadly, collection costs are distinct from attorney's fees. I would therefore affirm the superior court and respectfully dissent.

10. *Torrey*, 872 P.2d at 187.

11. *Id.* at 188 n. 1.

12. *Id.* at 188.

13. *See, e.g., Alabama State Bar v. Hallett*, 26 So.3d 1127, 1130 (Ala.2009); *Thomas v. Arkoosh Produce, Inc.*, 137 Idaho 352, 48 P.3d 1241, 1250 (2002); *Tulley v. Sheldon*, 159 N.H. 269, 982 A.2d 954, 958 (2009); *Harsch Props., Inc. v. Nicholas*, 182 Vt. 196, 932 A.2d 1045, 1047 (2007).

14. *See, e.g., Int'l Sales–Rentals Leasing Co. v. Nearhoof*, 263 So.2d 569 (Fla.1972); *Am. Serv. & Supply Co. v. Raby*, 348 Mass. 720, 206 N.E.2d 94, 95–96 (1965) (referring to both attorney's fees and costs of collection); *Strenge v. Clarke*, 89 Wash.2d 23, 569 P.2d 60 (1977) (referring to three categories of expenses: collection costs, court costs, and attorney's fees).

