**MILLGARD CORPORATION,**
**Plaintiff-Appellant,**

v.

**McKEE/MAYS, a Joint Venture,**

**Dallas County and the Commissioners Court of Dallas County, Texas,**
**Defendants-Appellees.**

**No. 87–1140.**

United States Court of Appeals,
Fifth Circuit.

Oct. 29, 1987.

Rehearing and Rehearing En Banc
Denied Dec. 2, 1987.

Walter O. Koch, Martha B. Goodloe, Troy, Mich., for Millgard Corp.

Stanley W. Curry, Jr., Joe F. Canterbury, Jr., Dallas, Tex., for McKee/Mays.

Earl Luna, Robert E. Luna, Dallas, Tex., for Dallas County.

Before REAVLEY, POLITZ, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Millgard Corporation ("Millgard") appeals from the dismissal of its complaints against McKee/Mays, a Joint Venture ("McKee/Mays") and Dallas County. We reverse.

Dallas County contracted with McKee/Mays for the construction of the Lew Sterrett Justice Center in 1978, and McKee/Mays subsequently awarded Millgard the caisson foundations subcontract for the project. However, in June 1979, shortly after beginning work on the project, Millgard encountered subsurface conditions different from those previously reported by the project's geotechnical engineers. According to Millgard, these unstable soil conditions necessitated approximately fifty percent more concrete in the foundation piers than originally anticipated, as well as the use of more expensive equipment and techniques. As per the subcontract,[1] Millgard continued work on the project and informed McKee/Mays of the situation on July 5, 1979, subsequently giving formal written notice that it was encountering an unexpected condition and was incurring increased costs.

On September 12, 1979, Millgard provided a detailed enumeration of the unexpected soil conditions on the project and an itemization of the estimated additional costs. McKee/Mays responded that Millgard's information was inadequate and requested additional documentation. Millgard accordingly submitted a revised request for additional compensation in November 1979.

In January 1980, Millgard completed its work under the subcontract, and in May 1980 the company formally requested addi-

---

1. The subcontract provided as follows:
12.2 CONCEALED CONDITIONS
  12.2.1 Should concealed conditions encountered in the performance of the Work below the surface of the ground or should concealed or unknown conditions in an existing structure be at variance with the conditions indicated by the Contract Documents, or should unknown physical conditions below the surface of the ground or should concealed or unknown conditions in an existing structure of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in this Contract, be encountered, the Contract Sum shall be equitably adjusted by Change Order upon claim by either party made within twenty days after the first observance of the conditions.

tional compensation of $711,264, 25% above the original contract price. After consultation with the architects and geotechnical experts, McKee/Mays opined that there were no unexpected subsurface conditions, and on June 12, 1980, it rejected Millgard's request for additional compensation.

Negotiations ensued. In March 1983, however, Millgard filed a demand for arbitration with the American Arbitration Association against Dallas County. The County countered with a state action to enjoin the arbitration, alleging lack of contractual privity between Millgard and Dallas County. Millgard, retaliating, petitioned to compel arbitration. In January 1984, the state district court sided with the County and entered a permanent injunction prohibiting Millgard from proceeding with arbitration.

Millgard instituted this diversity action on June 7, 1984 against McKee/Mays, which promptly impleaded Dallas County. In 1985, Millgard filed an amended complaint adding fraud and negligence claims against Dallas County, based on documents obtained in discovery that purportedly indicate that Dallas County knew of the unstable soil conditions in advance and did not disclose them to Millgard.

The district court granted the defendants' motions for summary judgment, holding that Millgard's cause of action against McKee/Mays accrued on the date Millgard made final demand under the subcontract (May 2, 1980), and was therefore barred by the four year state statute of limitations. It also is held that Millgard's tort claims against Dallas County accrued in 1979 and thus proscribed under state law in 1981. Millgard now appeals.

## I. MILLGARD'S CONTRACT CLAIMS AGAINST McKEE/MAYS

■ Citing *Godde v. Wood,* 509 S.W.2d 435, 441–43 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.), the district court held that Millgard's cause of action accrued no later than May 2, 1980, when Millgard made written demand for the additional amount. Consequently, the court concluded that because the instant action was filed

June 7, 1984, it was barred by Texas' four year statute of limitations for contract claims, Tex.Rev.Civ.Stat. Art. 5527(1) (now codified as Tex.Civ.Prac. & Rem.Code § 16.004(a)(3) (Vernon's 1986)). Millgard asserts that its cause of action accrued no sooner than June 12, 1980, when McKee/Mays rejected its request for additional compensation, or June 16, 1980, when Millgard learned of the rejection.

It is not disputed that under Texas law, a contract cause of action accrues upon breach. *Jackson v. J.R. Neatherlin Corp.,* 557 S.W.2d 327, 329 (Tex.Civ.App.—Houston 1977, writ ref'd n.r.e.); *Hurbrough v. Cain,* 571 S.W.2d 216, 221 (Tex.Civ.App.—Tyler 1978, no writ). The issue before us is at what point breach occurred. Millgard contends that breach occurred when McKee/Mays repudiated the contract by refusing its request for equitable adjustment in compensation due to unexpected subsurface conditions. Defendants argue that because the contract is silent as to the payment date for the equitable adjustment, payment was due when Millgard completed its performance under the contract (January 1980). Contending that Millgard could have filed suit for nonpayment at any time thereafter, defendants assert that breach must date from that time.

We find defendants' arguments unpersuasive. The general rule that a right to recover under a contract accrues at the time performance is completed, unless otherwise specified in the contract, has been invoked in the context of setting the earliest time when suit could be brought for payment under a construction contract, see *Jim Walter Homes, Inc. v. Valencia,* 679 S.W.2d 29 (Tex.App.—Corpus Christi 1984, modified on other grounds 690 S.W.2d 239); *Wade & Sons, Inc. v. Waco Construction, Inc.,* 612 S.W.2d 261 (Tex.Civ.App.—San Antonio 1981, no writ), or for defining the payment date for interest calculation purposes, *Irrigation Construction Co. v. Motheral Contractors, Inc.,* 599 S.W.2d 336 (Tex.Civ.App.—Corpus Christi 1980, no writ); *McDaniel v. Tucker,* 520 S.W.2d 543, (Tex.Civ.App.—Corpus Christi 1975, no writ); *Beck v. Lawler,* 422 S.W.2d 816

(Tex.Civ.App.—Fort Worth 1967, writ ref'd n.r.e.). It has not been unambiguously invoked in a limitations context.[2] Moreover, as will be seen, the existence of provisions "otherwise specified in the contract" renders this case different from the general accrual rule.

We agree with Millgard that in this case, the proper test is based upon the parties' contract and derives from McKee's repudiation of Millgard's proposed Change Order. See *Terry County Airport Board v. Clark,* 378 S.W.2d 932, 934 (Tex.Civ.App.—Amarillo 1964, no writ); *Permian Building, Inc. v. Greenblatt,* 442 S.W.2d 831, 834–35 (Tex.Civ.App.—Fort Worth 1969, writ ref'd n.r.e.). The case of *Stribling v. Moore,* 33 Tex.Civ.App. 297, 76 S.W. 593 (1903, no writ) is instructive here. In that case, plaintiff sold a tract of land to defendant, and the sale contract also provided that the defendant would pay the reasonable value of the fences on the property after the parties measured their length. Two years passed, during which time plaintiff repeatedly sought to meet to measure the fences and defendant repeatedly claimed that each proposed meeting date was not convenient. Finally, defendant repudiated his obligation to pay for the fences, and the trial court dismissed plaintiff's action as barred by the statute of limitations. Reversing, the court of appeals held that the proper date for limitations purposes was the date of repudiation.

This case eerily resembles *Stribling.* Article 12.2.1 of the contract called for an equitable adjustment of the contract price in the case of concealed conditions and set out procedures to be followed in such event. The record indicates that Millgard followed these contract procedures, by giving McKee/Mays prompt notice upon discovery of the unexpected conditions and providing it with requested documentation. Even after completing the construction work, it continued, as called for in the contract, to negotiate the equitable adjustment; all the while, Millgard was told that the matter was being considered or that additional documentation was required. McKee/Mays, in turn, submitted the proposed Change Order to its architect for his review and interpretation of the contract provisions on this subject. This request for adjudication was authorized by Articles 2.2.7–2.2.11 and 2.2.15. It was not until June 16 that Millgard learned McKee/Mays, acting upon the architect's advice, intended to deny that the subsoil conditions encountered by Millgard were "concealed conditions" supporting a change order. Under these circumstances, the parties were continuing to act under the express provisions of the contract after Millgard's construction work was completed, and we find that breach occurred as a matter of law no earlier than June 12, 1987.[3] Millgard's contract action was thus filed within the four year prescriptive period.[4]

## II. MILLGARD'S TORT CLAIMS AGAINST DALLAS COUNTY

■ Millgard also asserts that summary judgment on its tort claims against Dallas

---

**2.** *Godde v. Wood,* 509 S.W.2d 435 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.) [cited by the district court as *Godde v. Caisson* ], is readily distinguishable. While nominally a limitations case (the court conceded that the point had not been properly raised and thus need not be addressed), its holding was that plaintiff's cause of action accrued on the date plaintiff received notice of repudiation, which was also the date the work was completed.

**3.** Contrary to the suggestion of McKee/Mays, our holding does not imply that every breach of contract action accrues only upon the occurrence of demand and refusal. It should be clear that the requirements of the contract between these parties lead us to the conclusion that un-

der this contract, breach occurred when McKee determined not to accept Millgard's Change Order as falling within Article 12. See *Luling Oil & Gas Co. v. Humble Oil & Refining Co.%G,* 144 Tex. 475, 191 S.W.2d 716 (1946).

**4.** Our result is supported by sound policy considerations as well. If a contract provides a nonjudicial remedy for disputes, the nominal accrual of an action upon completion of the work thereunder might require a party to file suit before his resort to that remedy had been completed. Our result enhances the atmosphere in which such remedies are pursued. Moreover, our result discourages a likely defendant from drawing out the negotiating process until the limitations period elapses.

County was improper because the "discovery rule" and/or fraudulent concealment tolled the statute of limitations. Specifically, Millgard asserts that it had no indication of Dallas County's malfeasance until 1985, when discovery proceedings unearthed incriminating documentary evidence. The district court therefore erred in holding that Millgard's tort causes of action against Dallas County accrued in 1979, when Millgard encountered the unexpected conditions, and became barred two years later under then-applicable state law. We agree with Millgard that a touch-stone of the limitations inquiry in actions for fraud or misrepresentation is when Millgard discovered that Dallas County was withholding information on the unstable soil conditions.[5] *Mooney v. Harlin,* 622 S.W.2d 83, 85 (Tex.1981). Millgard introduced unrebutted summary judgment evidence supporting its date of discovery contention, so we cannot affirm the trial court's judgment on this basis. We therefore reverse the dismissal of these claims against the County.[6]

Dallas County urges us to rule on issues of res judicata and agency pertinent to its defense of a third-party action by McKee/Mays. As the district court did not pass on these issues, we decline to do so.

The judgment of the district court is REVERSED and the case REMANDED.

---

**5.** This is not to say that Millgard's lack of knowledge until 1985 is necessarily sufficient to prevent accrual of a fraud cause of action, see *Mooney,* or to prove fraudulent concealment of a negligence cause of action. *Borderlon v. Peck,* 661 S.W.2d 907 (Tex.1983). That apparent fact, however, requires further proceedings in the trial court before a definitive decision may issue on the limitations defense.

**6.** On remand, the district court will also have the opportunity to consider the County's defense of sovereign immunity under state law, which was raised but not decided below.