STOWERS, Justice.
I. INTRODUCTION
Jeff Graham prevailed in a civil suit against the Municipality of Anchorage for breach of contract and breach of the implied covenant of good faith and fair dealing. He was awarded partial attorney's fees under Alaska Civil Rule 82(b)(1). Graham argues that he should have instead been awarded full fees and costs under his union's collective bargaining agreement with the Municipality. Because the fee recovery provision in the agreement is not applicable to Graham's case, we affirm the superior court's order denying Graham's motion for full attorney's fees and costs.
II. FACTS AND PROCEEDINGS
Jeff Graham is employed as a firefighter/EMT by the Anchorage Fire Department (AFD). He has worked for AFD since 1995 and has held his current position since 2003. After taking AFD's engineer promotional exam in 2010, Graham wrote a letter to the AFD fire chief criticizing the subjective nature of the test. In 2012 Graham failed the interview portion of the engineer exam. He subsequently filed a complaint with the Alaska State Commission for Human Rights, alleging discrimination on the basis of his race (Korean) and age (48). He also petitioned his union, the International Association of Firefighters Local 1264 (the Union), to file a grievance against the Municipality of Anchorage on his behalf, under the Union's Collective Bargaining Agreement (CBA) with the Municipality.[1]
The Commission investigated Graham's discrimination claim but officially closed his *351 case in September 2013, as the investigation did not find substantial evidence to support his allegations. Similarly, the Union investigated "the facts and circumstances surrounding [Graham's] performance on the engineer test," but it declined to file a grievance against the Municipality to challenge Graham's exam results. In June 2012 the Union's counsel informed Graham: "You have exhausted your contractual remedies under Article VII of the [CBA]. You are free, at your own cost, to retain counsel and seek any other remedies to which you believe you may be entitled."
In February 2015 Graham filed suit against the Municipality, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and discrimination, among other legal theories. The case proceeded to trial, and in August 2017 a jury returned a verdict that the Municipality caused harm to Graham "by violating the express terms of the [CBA]" and "by violating the implied promise of good faith and fair dealing in the [CBA]." The jury also found that Graham's complaints about how the 2012 engineer exam was structured "were a motivating factor in him failing the oral board." Graham was awarded $667,000 in damages for lost wages and benefits, increased income taxes, and past emotional distress.
In October 2017 Graham moved for an award of full attorney's fees of $258,960.31 and full costs of $38,962.45 under section 7.4.1 of the CBA. Section 7.4.1 provides that "[i]n the event the prevailing party must seek enforcement in court of the arbitrator's decision, the expenses of such efforts shall be borne by the losing party." Graham also presented two alternative theories for recovery: enhanced attorney's fees under Alaska Civil Rule 82(b)(3) or partial attorney's fees under Civil Rule 82(b)(1).
In November 2017 the superior court awarded Graham $71,667 in partial fees under Civil Rule 82(b)(1) and $15,616.06 in partial costs under Alaska Civil Rule 79(f). The court denied his theory of recovery under section 7.4.1 of the CBA, finding that a "[p]lain reading of the CBA allows full fees only to enforce an arbitrator's decision. Implicitly there has already been a fully contested hearing. The full fees would only be for the enforcement action not the fully contested hearing." (Emphasis in original.) The court also denied Graham's request for enhanced fees under Rule 82(b)(3).
Graham appeals the superior court's denial of his full attorney's fees and costs under section 7.4.1 of the CBA.[2]
III. STANDARD OF REVIEW
"We review awards of attorney's fees for abuse of discretion,"[3] but "[i]nterpretation of an attorney's fees clause in a contract is ... a question of law."[4] We apply "our independent judgment in making such an interpretation."[5]
IV. DISCUSSION
A. The Superior Court Did Not Err By Denying Graham's Motion For Full Attorney's Fees And Costs Under Section 7.4.1 Of The CBA.
Graham argues that the superior court's interpretation of section 7.4.1 of the CBA was "erroneously strict and narrow" and that we should broadly construe section 7.4.1 to encourage efficient litigation and to "give relief to employees who must enforce CBA rights in court after [the Municipality] and the [U]nion deny arbitration." In contrast, the *352 Municipality argues that the plain language of section 7.4.1 "only provides recovery of attorney's fees to the Municipality or [the Union] in the event that an arbitration agreement needs to be enforced." Because Graham is not a party to the CBA and neither party is seeking to enforce an arbitration agreement, the Municipality argues that section 7.4.1 is not applicable to this case at all. We agree.
1. Section 7.4.1 of the CBA applies only to enforcement of an arbitration decision between the Municipality and the Union.
The goal of contract interpretation "is to 'give effect to the reasonable expectations of the parties.' "[6] We determine "the parties' reasonable intentions by looking 'to the language of the disputed provision and other provisions, relevant extrinsic evidence, and case law interpreting similar provisions.' "[7] Furthermore, "interpretation of a contract term does not take place in a vacuum, but rather requires consideration of the provision and agreement as a whole."[8]
a. Language of the disputed provision and other provisions
Graham argues that "a contract provision allowing a prevailing party to recover its reasonable attorney's fees trump[s] Civil Rule 82 's provision for partial fees."[9] The Municipality does not dispute this legal concept but argues that the plain language of section 7.4.1 is unambiguous and that it is simply inapplicable to Graham's case. Whether the language of section 7.4.1 is ambiguous depends on whether "the disputed terms are reasonably subject to differing interpretation after viewing the contract as a whole and the extrinsic evidence surrounding the disputed terms."[10]
Section 7.4.1 of the CBA provides in full: "In the event the prevailing party must seek enforcement in court of the arbitrator's decision, the expenses of such efforts shall be borne by the losing party." As the superior court found, the plain language of section 7.4.1 indicates that it applies only to recovery of attorney's fees and costs for enforcement of an arbitration decision. It is undisputed that an arbitrator was never involved in Graham's case and that an arbitrator's decision was never made. This provision is therefore inapplicable to Graham's case.
The Municipality argues that the overall structure of Article 7 of the CBA also supports this conclusion. Article 7 outlines a three-step grievance procedure for a claim by the Municipality or the Union. The first step is for either party to file a grievance, which is "defined as a claim by the Union or the Municipality, alleging a violation of th[e] Agreement." If a grievance has been filed but it cannot be resolved internally between the Municipality and the Union, then either party may opt to submit the grievance to an arbitrator. Section 7.4 provides that in such a scenario, the "decision of the arbitrator shall be final and binding on all parties," and "[t]he losing party shall pay all of the expenses and fees of the arbitrator." Section 7.4.1 is a subsection of 7.4[11] - it provides additional recovery of fees if "the prevailing party must seek enforcement ... of the arbitrator's decision." Section 7.4.1 is only triggered *353 after a party pursued the full three-step grievance procedure, an arbitration occurred, the arbitrator issued a decision, and the losing party did not abide by the arbitrator's decision. None of these steps occurred in Graham's case.
Interpretation of section 7.4.1 also "requires consideration of the ... agreement as a whole."[12] As the Municipality points out, Graham is not a party to the CBA. The CBA is an agreement between the Union and the Municipality, and it recognizes the Union "as the sole and exclusive bargaining agent for the purpose of establishing ... conditions of employment." Article 7 provides the procedure for the Union and the Municipality to resolve a grievance between the two parties; it does not provide a comparable process for an individual employee to pursue a grievance against the Municipality independent of the Union.[13] Although the Union may bring a grievance on behalf of an individual employee, that did not occur in this case. The grievance procedure in Article 7 was therefore never invoked and section 7.4.1 was never triggered. The overall structure of the CBA and Article 7 make clear that section 7.4.1 was not intended to apply to recovery of fees and costs for litigation brought by an individual employee.
b. Extrinsic evidence
To interpret a contract, we also consider relevant extrinsic evidence such as the "language and conduct of the parties, the objects sought to be accomplished[,] and the surrounding circumstances at the time the contract was negotiated."[14] If there is no extrinsic evidence, "our analysis of this issue must rely on the language of the contract."[15]
Graham briefly asserts that the Union "gave him a right-to-sue letter and authorized him to enforce the rights in the [CBA]." But Graham's characterization of this letter is not accurate. The Union's June 2012 letter to Graham stated explicitly that Graham had exhausted his contractual remedies under Article 7 of the CBA and any further action he took against the Municipality would be independent of the Union and at his own cost. The Union did not assign him the rights to pursue this claim under the CBA, as Graham posits.
Accordingly, Graham did not submit extrinsic evidence that supports an interpretation of section 7.4.1 contrary to its plain meaning. And as discussed above, section 7.4.1 is unambiguous - it is not "reasonably susceptible to both asserted meanings."[16]
c. Case law interpreting similar provisions
We have not previously been asked to consider a fee-recovery provision in this exact context. But our case law interpreting grievance procedures in similar collective bargaining agreements supports our conclusion that section 7.4.1 is not applicable to Graham's case. Collective bargaining agreements are contracts between a union and an employer;[17] employees typically do not have the power to pursue the grievance procedures provided in these agreements independent of their union.[18] Graham has not cited to any cases that would support a different conclusion.
*354 d. Conclusion
We have considered the plain language of section 7.4.1, the overall structure of Article 7, the CBA as a whole, and case law interpreting similar agreements; it is clear that section 7.4.1 is not applicable to Graham's case. The superior court did not err by denying Graham's motion for recovery of full attorney's fees and costs under the CBA.
2. Section 7.4.1 of the CBA cannot be construed so broadly as to encompass enforcement of CBA rights in court by individual employees.
Graham also argues that section 7.4.1 should be broadly construed to "give relief to employees who must enforce CBA rights in court." He asserts that "[the Municipality] takes dues out of each paycheck of AFD employees for ... the efficient litigation of valid employment grievances in arbitration" and that he was denied access to the efficient arbitration procedures provided in the CBA. He contends that the attorney's fees clause in the CBA should therefore be broadly construed to "encourage [the Municipality] to comply with its legal duties ... [and] to efficiently arbitrate employment claims out of court."
Graham particularly focuses on this court's precedent of "constru[ing] contractual attorney's fees provisions broadly, and in a way that encourages efficient litigation."[19] He also argues that Alaska has a " 'strong public policy in favor of arbitration,' [and that] we apply a presumption in favor of arbitrability."[20] While these principles are valid, they are not relevant to his case. Our case law does not support prioritizing a broad construction of contractual attorney's fees provisions to the exclusion of all other rules of contract interpretation, such as the plain meaning rule.[21] And Graham was not able to access the efficient arbitration procedures provided in the CBA because the Union declined to pursue a grievance on his behalf. We are not persuaded that we should ignore the plain and unambiguous language of the CBA; section 7.4.1 cannot be construed so broadly as to encompass the recovery of fees and costs for litigation brought by an individual employee.
V. CONCLUSION
We AFFIRM the superior court's order denying Graham's motion for full attorney's fees and costs under section 7.4.1 of the CBA.

The purpose of the CBA is "the promotion of harmonious relations between the Municipality and the Union, the establishment of an equitable and peaceful procedure for the resolution of differences, the establishment of rates of pay, hours of work, and other terms and conditions of employment."

Graham does not dispute that Civil Rule 82(b)(1) was an appropriate alternative theory of recovery, nor does he dispute the superior court's calculation of fees under this rule. He argues solely that the court should have awarded full fees under section 7.4.1 of the CBA. He no longer argues for enhanced fees as an alternative theory of recovery.

Kollander v. Kollander , 400 P.3d 91, 95 (Alaska 2017) (quoting Roderer v. Dash , 233 P.3d 1101, 1106 (Alaska 2010) ).

Johnson v. Olympic Liquidating Tr. , 953 P.2d 494, 497 (Alaska 1998).

Id. ; see also Larsen v. Municipality of Anchorage , 993 P.2d 428, 431 (Alaska 1999) ("Contract interpretation presents a question of law that we review de novo.").

Stepanov v. Homer Elec. Ass'n ., 814 P.2d 731, 734 (Alaska 1991) (quoting Mitford v. de Lasala , 666 P.2d 1000, 1005 (Alaska 1983) ).

Flint Hills Res. Alaska, LLC v. Williams Alaska Petroleum, Inc. , 377 P.3d 959, 975 (Alaska 2016) (quoting W. Pioneer, Inc. v. Harbor Enters., Inc. , 818 P.2d 654, 656 (Alaska 1991) ).

Id. (quoting Mahan v. Mahan , 347 P.3d 91, 95 (Alaska 2015) ); see also Schaub v. K & L Distribs., Inc. , 115 P.3d 555, 563 (Alaska 2005) ("When interpreting collective bargaining agreements, courts 'will if possible give effect to all parts of the instrument and an interpretation which gives a reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable.' " (quoting 20 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 55:20 (4th ed. 2001) )).

Tufco, Inc. v. Pac. Envtl. Corp. , 113 P.3d 668, 674 (Alaska 2005).

N. Pac. Processors, Inc. v. City & Borough of Yakutat, Alaska , 113 P.3d 575, 579 (Alaska 2005) (quoting Wessells v. State Dep't of Highways , 562 P.2d 1042, 1046 (Alaska 1977) ).

See Marathon Oil Co. v. ARCO Alaska, Inc. , 972 P.2d 595, 604 (Alaska 1999) (concluding that a provision's location in a contract is relevant to its interpretation).

Flint Hills Res. Alaska, LLC , 377 P.3d at 975 (quoting Mahan , 347 P.3d at 95 ).

Section 7.7 does provide an "Employees' Bill of Rights" to ensure that individual rights of employees are not violated, but it does not provide a process for an individual employee to pursue a grievance against the Municipality.

Peterson v. Wirum , 625 P.2d 866, 870 n.7 (Alaska 1981) (quoting Pepsi Cola Bottling Co. v. N.H. Ins. Co. , 407 P.2d 1009, 1013 (Alaska 1965) ).

Marathon Oil Co. , 972 P.2d at 604.

Larsen v. Municipality of Anchorage , 993 P.2d 428, 431 (Alaska 1999) (quoting Johnson v. Schaub , 867 P.2d 812, 818 (Alaska 1994) ).

Collective-Bargaining Agreement , Black's Law Dictionary (10th ed. 2014) ("A contract between an employer and a labor union regulating employment conditions, wages, benefits, and grievances.").

See Bernard v. Alaska Airlines, Inc. , 367 P.3d 1156, 1163-64 (Alaska 2016) (concluding that "[t]he [collective bargaining] agreement thus emphasizes repeatedly that ... only appeals to arbitration taken by the union ... are contemplated," and that "[t]here is nothing in the agreement's plain language that would lead an employee to believe that the Board was authorized to consider any appeals other than those that were 'properly submitted to it' by the union"); Schaub v. K & L Distribs., Inc. , 115 P.3d 555, 561-62 (Alaska 2005) (concluding that collective bargaining agreement "clearly require[d] union participation in steps two and three [of the grievance procedure]" and that union had "sole power" under agreement to pursue full grievance procedure); Casey v. City of Fairbanks , 670 P.2d 1133, 1137, 1139 (Alaska 1983) (finding "nothing on the face of the [collective bargaining agreement] that requires or even allows an employee to unilaterally file a written grievance with the Union and the City," and that employee "cannot simply avail himself of the [collective bargaining agreement's] arbitration procedure without the Union's involvement").

O'Connell v. Will , 263 P.3d 41, 46 (Alaska 2011).

Ahtna, Inc. v. Ebasco Constructors, Inc. , 894 P.2d 657, 662 (Alaska 1995) (quoting Univ. of Alaska v. Modern Constr., Inc. , 522 P.2d 1132, 1138 (Alaska 1974) ).

See O'Connell , 263 P.3d at 46-47 (reiterating our previous holdings that "where the parties intend it, contractual attorney's fees clauses must be construed as calling for fee shifting at all [court] levels," and concluding that such "contractual attorney's fees clauses ... [also] provide for attorney's fees incurred during post-judgment enforcement proceedings"; but noting that a broad construction was appropriate because "the plain language of the contract [at issue] indicates that the parties intended to provide for all reasonable attorney's fees").